Harry, J.
A’rvilla B. Jordan, late of Auburn, died December 16, 1899, testate, and in the first paragraph of her will disposing of her property she used the 'following language, “As soon as may be after my decease I direct my executor hereinafter named, to convert my estate into money,” and! in the same paragraph directed her executor after payment of debts, funeral charges and expenses of administration, to dispose of her estate by item one of said will as follows:
*126 “First, all the rest, residue and remainder of my said estate, I direct my Executor hereinafter named to pay over to James P. Hutchinson, olf said (Auburn, to be held by ihlim in trust for the following .purposes, to wit: Upon the receipt thereof from my siaid Executor, he shall invest the same, in safe and productive property, and from tihe income thereof, pay all necessary expenses and charges incurred in the proper management of said trust, and dispose of .the net income thereof as follows, to wit: If my said son, Harry E. Jordan, shall live to 'the age of fifty-five years, then this trust 'is to continue till that time, and the net income thereof of said •trust estate is to (be paid to him, in each year In equal quarterly payments, until he Shall arrive at the age of fifty-five years, at which time, I hereby direct my said Trustee or his successor in said trust, to pay over and to ¡convey to him, 'the said Harry E. Jordan, the principal and income olf said trust estate then remaining in the name of said trustee; but if my said son, Harry E. Jordan, shall decease before he arrives at the age of fifty-five years, then this trust is to terminate at his decease, and I direct my said Trustee or his successor in said trust to pay over to Lilla J. Jordan, if she be then living,-the sum of one thousand ($1000) dollars, and to Mabel I. Jordan, if ¡she be then living, the sum of ¡one thousand ($1000) dollars, and I direct my said Trustee or his successor in said trust, to distribute the remainder thereof one-half part thereof in equal shares to my brothers and sisters then' living, and to the legal heirs of any of my brothers and sisters, then deceased, by right of representation. Abd the other half pant thereof in equal shares to the brothers and sisters of my late husband, James S. Jordan, then living, and to the legal heirs of any of his brothers and sisters, then deceased, by right of representation.”
In January, 1902, 'George A. Allen was appointed 'guardian of Harry E. Jordan by the Probate Court of Androscoggin County, and continued to act as such guardian until the death of said 'Harry E. Jordan, who died Abgust 8, 1909, without having attained the age of fifty-five years. May 2, 1902, the executor delivered to James P. Hutchinson, the trustee named 'in the will, ’all the estate remaining in his hands, included in ¡which was the homestead farm appraised in the inventory of the executor at $5500, which the executor did not convert into cash as directed in the will, and at *127 the time foe turned1 the property over to ¡Mr. Hutchinson, as trustee, he deeded! the farm to him as trustee, as of the value of $5500, which sum was agreed to 'by the executor and trustee. At that time the farm Contained some sixty acres of standing timber and wood.
The trustee retained' the title to the farm until after the death of Harry E. Jordan, a period of seven years, before which time the executor foad retained the title to the farm1 in the estate for two years and four and a half months. The trustee leased the farm to Mr. Allen, the guardian of Harry E. Jordan, for $225 per year, and it is claimed that the trustee retained' the title to the farm at the request of Harry E. Jordan and his wife, and that it was leased to the guardian for the use of said1 Harry E. Jordan, who lived upon it a part of the first year and a few weeks of another season.
During ¡the seven years that the trustee held the title to the farm, during the lifetime of Harry E. Jordan, the $225 which he charged the guardian of Harry E. Jordan for the use of the farm, and the guardian charged Harry E. Jordan in his guardianship account for the use of the farm, did not pay the taxes and other necessary charges against the farm by $65.46, and the income of the other trust property that should have been paid to the guardian of Harry E. Jordan was used to pay that deficiency, and also to make up the $225 yearly rental of the farm, Which wias only paid and received by the entries upon the ¡books, no money passing from the guardian to the trustee, or from the trustee to the guardian, and Harry E. Jordan only living upon the premises a short time, as above stated.
After 'the death of 'Harry E. Jordan, the trustee sold the farm for $6500. The administratrix of Harry E. Jordan filed in the Probate Court a petition in equity, R. S., ch. 70, sect. 10, setting forth the above facts, and alleging that the farm was non productive, and that the trustee had, by retaining the title, deprived Harry <E. of the income of that $5500; that the ¡increase in value as shown by the sale represented the growth of the timber and wood upon the farm, and asked that the ¡court decree that the trustee pay the increase, viz., $1000, to her as the administratrix of Harry E. Jordan. The trustee filed an answer to said petition, stating therein that there remained in his possession of the trust estate the sum of $15,145.62, and alleged that in all things connected with said trust estate he foad conformed to law and the directions of the will, and *128 that he- retained the farm as a part of the trust estate ¡at the request of said Harry E. Jordlan and his wife; that he had filed his final account, and asked that the petition be dismissed because the parties named in his answer (residuary legatees) were entitled to the fund in his bands under the terms of • said will; that these parties were interested, and should have been made parties to the petition of the administratrix. He also filed a petition setting forth his acts as trustee, the termination of the trust, the names of the parties that he understood were entitled to the trust fund (residuary legatees), and ¡also that the adlministratrix had filed the petiton as above, and asked that notice of said petition be given to said administratrix and the parties alleged to be entitled to the fund, and .that the ¡court decree final distribution. Upon this petition said adlministratrix appeared and set forth the above facts and claimed that the $1000 should be treated as the income of said $5500, and decreed to her as administratrix o'f said Harry E. Jordan. Upon hearing, the petition filed by her was dismissed, and upon the petition of the trustee her claim was disallowed, and the trustee ordered to distribute the balance of the .trust fund in his hands to the residuary legatees under the twill. Thereupon the administratrix of Harry E. Jordan appealed from both decrees to this ¡court. The appeals were heard at the April term, 1912, of this ¡court at Auburn, at Which hearing the adlministratrix of Harry E. Jordan contended:
1st. That the trustee was not justified as a matter of law, in receiving from the executor $5500 worth of the trust estate invested in said farm in. the form of real estate instead of in money.
2d. That said farm iwas not such property as the trustee was authorized by the will to keep any of the funds of said trust estate invested in.
3d. That there was no competent evidence of ;an agreement or waiver justifying the trustee in keeping the fund of said estate invested in said farm.
4th. That the increase in value of the farm, due to the growth of the timber and wood .thereon, should be treated as a matter of law as belonging to the ¡cestui que trust as ¡an increment of the trust fund, rather than as belonging to .the remainderman as an increment of real estate.
The trustee claimed that the homestead farm was retained by him as an investment in part at least, because of the expressed wish *129 and request of Harry 'E. Jordan, cestui que trust, and his wife, Lilla J. Jordan, and testimony was admitted, subject to exception, showing th'at both Harry E. Jordan and his wife requested the trustee to retain the title to the farm'. This evidence was objected to, because said Harry E. Jordan .was not sui juris, and not competent to waive his .rights in the matter, and because his wife had no interest in the trust fund1. The court overruled the above claims and contentions of the .administratrix, and ruled as matter of law that said appeals could not be sustained, and ordered both- appeals dismissed and the estate distributed as prayed for by the trustee, to which rulings the administratrix excepted, and the case is before this court upon her exceptions.
ust. It was the duty of the trustee to follow the directions in the will appointing him trustee, and administer the trust according to the terms upon which the property was devised to him in trust. The will directs “Upon the receipt thereof from ,my executor, he shall invest the same in safe and productive property . . . and the net income thereof of said trust estate is to be paid to. him (Harry E. Jordan) in each year in equal quarterly payments until he shall arrive at the .age of fifty-five years.” A farm that, during the seven years it was 'held by the trustee, did not return income enough to pay the taxes and necessary expenses, cannot be called “safe and productive property,” or such property as that from which the cestui que trust could receive a quarterly income. It was not the kind of property the trustee was directed to invest the funds in; it was not safe and productive, and was not such property as trustees, unless so directed by the instrument creating the trust, .are authorized to invest funds in. First exception sustained.
2d. The second exception for the above reasons must be sustained.
3d. The trustee claimed that Harry E. Jordan and1 his wife requested 'him to keep the title to the farm, instead of complying with the terms of the trust, and that he w;as justified in keeping the trust funds invested iin the farm. It was the duty of the trustee to execute the trust according to .the terms of the will creating the trust. The testator conveyed' the property to the trustee, instead of to her son Harry E. Jordan, because she did not want the son to have the control of it. It was not Harry E. Jordan’s judgment that *130 she wished to control the .trust property. Harry. B. Jordan was under guardianship, and in law incompetent to manage h'is own estate, and testimony of how he desired the trust estate managed wa9 inadmissible to excuse the trustee for the non performance of the dear arid unmistakable intent of .the testator, as expressed in the dause of the will creating the trust. The testimony that the wife of Harry E. Jordan consented or requested the trustee to ignore the terms of the trust was inadmissible, because .she had no interest in the trust fund, and it was not her judgment that the testator depended upon to have her wishes as expressed in .the will carried out, ¡but it was the judgment of the trustee. The trustee had no right, by agreement or understanding with the cestui que trust, or his wife, to .change the expressed wish of the testator in regard to the trust estate. The exceptions to the admission of the testimony tending -to show the consent and request of Harry E. Jordan and his wife that 'the trustee retain the farm as a part of the trust estate must be sustained.
4th. The fourth exception that the increase in value of the farm, due to the growth of the timber and wood thereon, should be treated as a matter of law as belonging to the cestui que trust as as increment of the trust fund, rather than as belonging to the remainderman as an increment of the real estate, must be overruled.
By the terms of the will the trustee was entitled to, and it was his duty to receive from'the executor, the balance of the estate in money, and having taken in discharge of the executors liability property instead of money, we must regard the farm as an investment made by the trustee, Maddocks v. Moulton, 84 Maine, 550, and when the trustee took the title to the farm it was a mere change in the form of the corpus of the fund. The farm remained the principal of the fund from which the cestui que trust was to receive the income, and the sale by the trustee of the farm was simply a conversion from one form of property into another. The money received by the trustee was not income, it was principal, the increased price was caused by the natural causes, accretions to the trust estate, caused by the growth of timber or the increased value of the real estate in the vicinity of the farm, and became a part of the principal and passed at the death of the cestui que trust to the remainderman.
*131 “If the trust fund is invested in land, and ithe land raises in value from its situation, or from the use and necessary improvements made by the tenant for life, such increased value becomes capital and belongs to the remainderman.” Perry on Trusts, sees. 545, 546.
“If the wall badi required the trustee to invest in real estate, the rents, increase and profits of which were made payable to the life tenant iwith remainder over, it cannot be questioned but that any increase of the value of the land- from natural causes would have been an accretion to the capital, and inured to the benefit of the remainderman.” In re Gerry, 103 N. Y., Rep. 445; In re Cutler, 52 N. Y., 842.
“The remainderman could! not thereby be deprived of a natural accretion to the 'fund however invested1, or the life tenant become entitled to an increase which, if the fund had been lawfully invested, would not have aocruiedi to him.” In re Gerry, supra.
The remaining exceptions are to the rulings of the court dismissing both appeals. Those rulings were undoubtedly predicated upon the- rulings to Which exceptions were taken, which exceptions have already been considered, but it is necessary to examine the statute under Which these proceedings are held as well as 'the evidence given at the hearing, which is reported as a part of the exceptions, and to determine whether the cases shall be remanded for further hearing or not; because if ithe exceptions which have been sustained are immaterial, and ithe cases do not disclose a state of facts that calls for the court to charge the trustee, then the exceptions dismissing the appeals should ibe overruled.
Section 10 of chapter 70, R. S., provides that the Probate Court and the Supreme Judicial 'Court “may 'hear and determine, in equity, all other matters relating to the trust is herein named.” The subject matter of the petitions in these cases are mentioned in said chapter, and are matters of which the Supreme Judicial Court and the Probate Court have jurisdiction.
Section 10, under Which the petitions were 'brought, gives the Probate Courts jurisdiction which they did not have before the statute in cases relating to trusts. There has been no case reported since the enactment of that statute in which Ithe Probate Court has taken jurisdiction of eases in equity relating to trusts. The proceedings under this statute should be according to the equity practice *132 of the Supreme Judicial Court as far as it ,is applicable to the Probate Count. The bill, although addressed to the Probate Court, should1 be framed, .as prescribed by the equity rules; all parties having an interest in the subject matter should be made parties, and notice given to them according to the equity practice and not according to the probate practice. At the return day of the process, under chapter 25 of the Laws of 1911, the count may fix such time, or times, for filing answer, plea or demurrer, or replication, or for the hearing of the case as justice may require. To 'expedite the hearing the court should at the return term fix the itimes as specified by the Laws of 191T. In this case, the prayer of the administratrix of Harry E. Jordan is that the court will decree a reasonable income for said $5500 so improperly invested in said farm to be distributed to her out of the balance shown by the trustee’s account, or that the court will decree that the profit of $1000 realized from the sale of said farm be decreed to her as and for the net income of said $5500 fox said period.
The trustee in his answer to the petition of the adminsitraitrix set forth the names of the residuary legatees under the will’of Arvilla B. Jordan and alleged that they were necessary parties, and asked that the petition be dismissed as they had not been made parties to the bill. We are nnable to tell from, the record what was done with that motion. The printed case does not show that it was relied upon or called to the attention of the court who heard the appeals. I't was not argued or insisted upon in the briefs at the hearing 'before 'this court, and the copy of the decree filed by the Judge of Probate does not refer to it. Whether the objection was remedied by making the residuary legatees parties, or whether they appeared and voluntarily beaame parties, we are unable to state. Under the prayer of the administratrix’s petition that the court will decree that the profits of $1000 realized from the sale of said farm be decreed to her ias and for ‘the net income of salid $55°o, they are necessary parties, and unless the residuary legatees have become parties Ito the bill, the petition of the administratrix should be amended by striking out that .prayer. The trustee’s petition asks the court to determine in equity who are entitled to said estate, and thelir respective shares therein . . . , and to order the said fund to be distributed accordingly. Before the court can do that the *133 claim of the estate of Harry E. Jordan against the trustee must be settled. The same question that the administratrix raised by her petition is open to her upon the trustee’s petition and it is immaterial upon which petition the question is decided.
As the trustee was entitled, and it was his duty (to receive from the executor the balance of the estate in money instead of which he took the title to the unproductive farm, we must regard the farm as an investment made by him with the funds of the estate. Maddocks v. Moulton, supra. And it not being an investment in the kind of property he was directed by the will to invest the funds in, viz., “safe and productive property” that would enable him to pay an income for the support of Harry E. Jordan, as it produced no income, and was a burden to the other trust funds, the trustee should be charged for the improper investment a reasonable income for the amount of the trust funds invested in said farm from the time he took the title to the death of Harry E. Jordan. This charge should not be deducted from the principal of the trust funds in his hands, but a charge against him personally for the improper management of the trust funds. Whether the amount should be more than 4%, the amount paid by savings banks during the period that the trustee held the trust funds so invested, must be settled by the Justice who hears the case, as the case not being before us upon appeal we are not authorized to revise, modify or confirm the decree of the Justice who heard the case; but as the exceptions are sustained must remand the case for further proceedings in accordance wTith this opinion.

Exceptions sustained.