The **MERRILL TRUST COMPANY** in its capacity as Executor under the will of **Emma C. Shaw,** late of Bangor, County of Penobscot, State of Maine, deceased,

v.

**UNITED STATES** of America.

Civ. No. 1020.

United States District Court
D. Maine, N. D.

Oct. 17, 1958.

George F. Peabody, Merrill R. Bradford, Bangor, Me., for plaintiff.

Peter Mills, U. S. Atty., Portland, Me., Rufus E. Stetson, Jr., Tax Division, Department of Justice, Washington, D. C., for defendant.

GIGNOUX, District Judge.

This matter comes before the Court upon defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A.

The principal action was brought by complaint filed May 7, 1957, pursuant to the provisions of 28 U.S.C.A. § 1346(a)(1). It seeks recovery of $12,604.53 of federal estate tax and interest alleged to have been erroneously assessed and collected from plaintiff. The question presented is whether on the facts alleged in the complaint it must be ruled as a matter of law that the value of certain charitable bequests in remainder could not be definitely ascertained as of the date of a testatrix's death, so that in consequence her estate cannot be allowed a deduction therefor under § 812(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(d).

Section 812(d) of the Internal Revenue Code of 1939 provides in pertinent part as follows:

"§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate— * * *

"(d) *Transfers for public, charitable, and religious uses.* The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation * * *."

Treasury Regulation 105, promulgated under the Internal Revenue Code of 1939, further provides:

"Sec. 81.44 (as amended by T.D. 5239, 1943 Cum.Bull. 1081, 1101, and by T.D. 5351, 1944 Cum.Bull. 579, 580). *Transfers for public, charitable, religious, etc., uses.*

    *        *        *        *        *        *

"If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use * * *."

"Sec. 81.46 *Conditional bequests.*

    *        *        *        *        *        *

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." [1]

Plaintiff is the duly appointed executor and trustee under the will of Emma C. Shaw, who died on August 17, 1952, a resident of Bangor, Maine. In Paragraph Sixth of her will the testatrix left the residue of her estate to her trustee in trust to pay over the net income therefrom to her two sisters, Isetta R. Shaw and Cora L. Shaw, or the survivor, with remainder upon the death of the surviving sister to four admittedly charitable organizations. Paragraph Sixth further authorized invasion of the principal of the trust for the benefit of testatrix' sisters, as follows:

"If either of my said sisters determines that more than the net annual income is necessary for her comfortable care, support and maintenance *and her judgment in this respect is to be conclusive,* my Trustee is authorized to pay over to such sister such portion of the principal of the trust estate as she in writing may request, provided that during the lifetime of both of my said sisters my Trustee shall not pay to either sister more than one-half of the principal of the trust estate. In the event only one of my sisters is living, my Trustee is authorized to pay over to her all or such part of the principal of the trust estate as she in writing may request.

"In the event either of my said sisters, through incapacity or other-

---

[1]. The Supreme Court has upheld these regulations, in substantially their present form, as appropriate implementations of the statute, and, having been in effect during successive reenactments of the statute, as defining the scope of inquiry in cases of this sort. Merchants National Bank of Boston v. Commissioner, 1943, 320 U.S. 256, 260, 64 S.Ct. 108, 88 L.Ed. 35.

wise, should fail to request my Trustee to make payment from the principal as aforesaid and my said Trustee should in its sole discretion consider that the comfortable care, support and maintenance of either or both of my said sisters requires more than said net annual income from this trust, then my said Trustee is authorized from time to time to make payment to or on behalf of my said sisters, or either of them, from the principal of the trust estate in such amounts as it may deem proper without obligation to make payment in equal amounts." (Emphasis supplied.)

It is alleged in the complaint that the testatrix was survived by one sister, Cora L. Shaw, who was 81 years old and under legal conservatorship at the time of the testatrix' death; that she possessed in her own right four savings accounts totaling $36,184.63; that her mode of living throughout her lifetime had been extremely meager and modest, and had become more so at the time of the death of the testatrix by reason of her extreme deafness and the increased infirmities of old age; that from July 1, 1952, to September 19, 1953, the conservator paid out $2,387.60 for her care, support and maintenance, and from September 19, 1953, to May 5, 1954, the date of her death, the conservator similarly paid out $2,081.32; that her needs were approximately one-half of the income which was available for her comfortable care, support and maintenance; that plaintiff, as trustee, in fact made no disbursements of principal funds during her lifetime; and that "all of these factors established that degree of ascertainability and standard of living from which the Plaintiff in its said capacity could reasonably determine that the possibility of invasion of the principal of said trust was so remote as to be negligible." It is further alleged in the complaint that on or about October 20, 1953, plaintiff filed an estate tax return for decedent's estate, which showed no federal estate tax due; that in that return plaintiff reported $103,713.07 as the net residue of the estate, which constituted the principal of the trust under Paragraph Sixth, and claimed as the value of the remainder interests bequeathed to the charities a deduction of $88,187.22 under § 812(d) of the Internal Revenue Code of 1939; that upon audit the Commissioner of Internal Revenue disallowed the charitable remainder deduction and determined a deficiency of $12,317.77 in estate tax, plus interest on the deficiency of $286.76, which sums were paid by plaintiff or or about April 6, 1955; and that on March 12, 1956, plaintiff filed with the District Director a claim for refund, which was disallowed on January 17, 1957.

The question is whether, despite the power to expend the principal of the trust for the benefit of the testatrix' surviving sister, the value of the charitable remainder can be shown to have been definitely ascertainable as of the date of the testatrix' death, so as to qualify for the charitable deduction.

At the outset, it must be noted that Paragraph Sixth of the will contains two separate and distinct powers of invasion. In the absence of any request by the life beneficiary, it confers upon the trustee the power to invade corpus when in its sole discretion her comfortable care, support and maintenance requires more than the net annual income from the trust. Defendant concedes that the language used by the testatrix in granting this power established for the trustee a sufficiently definite standard to make the value of the charitable remainder ascertainable at the date of the testatrix' death, and therefore deductible under the rule of Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L. Ed. 647. See Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589; Isaacson v. Clauson, D.C.Me.1951, 95 F.Supp. 482.

But Paragraph Sixth also authorizes the trustee to pay out principal upon request of the life beneficiary, if the beneficiary determines that more than the net annual income of the trust is necessary for her comfortable care,

support and maintenance, and it provides that "her judgment in this respect is to be conclusive." Defendant contends that the quoted clause negates any objective limitation of the power to invade corpus thus given to the life beneficiary, and that hence the value of the remainder was not ascertainable at the date of the testatrix' death and is not deductible, under the rule of Merchants National Bank of Boston v. Commissioner, 1943, 320 U. S. 256, 64 S.Ct. 108, 88 L.Ed. 35 and Henslee v. Union Planters National Bank and Trust Company, 1949, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259. Defendant takes the position, therefore, that the complaint must be dismissed without considering the question of the likelihood of actual invasion of the corpus by the trustee during the lifetime of the life beneficiary. See Newton Trust Co. v. Commissioner, 1 Cir., 1947, 160 F.2d 175, 178, 180. Plaintiff, on the other hand, argues that the language of the will, construed under Maine law, together with the allegations of the complaint as to the surviving sister's advanced age, incapacity, resources, and limited needs, established for the trustee a sufficiently objective standard so that this power of invasion is also within the rule of Ithaca Trust Co. v. United States, supra. Therefore, plaintiff contends that defendant's motion to dismiss should be denied and plaintiff should be given opportunity to show that the chance of actual invasion was negligible.

The test that must be used here is that laid down by the Supreme Court in Merchants National Bank of Boston v. Commissioner, supra, and Henslee v. Union Planters National Bank and Trust Company, supra. It is that extrinsic circumstances are to be disregarded unless the will itself furnishes a definite standard of guidance for the trustee. It has been succinctly set out by the Court of Appeals for this Circuit in Newton Trust Co. v. Commissioner, supra, as follows (160 F.2d at page 178):

"It would seem that a proper analysis of these powers of invasion cases in conformity with the statute and the regulations must rest on a consideration of two basic propositions. The first problem would concern the measurability of the possible exercise of the power in terms of a definitely ascertainable standard. When no calculable standard is present, no deduction should be allowed since the value of the charitable remainder cannot then be ascertained. If a fixed standard is ascertainable, then as the second step in any analysis it becomes necessary to examine the remoteness of invasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive."

Unless, therefore, a standard for the exercise of the life beneficiary's power of invasion is ascertainable from the language of the will in the instant case, there is no occasion for examining the possibility of invasion and the remoteness thereof. This second question only becomes pertinent when the standard is found to exist. Newton Trust Co. v. Commissioner, supra, at page 180.

■ Plaintiff has cited a number of cases in which the language of the will was found to contain a sufficiently objective standard to support the deduction. Where the power of invasion was limited to the maintenance of the life tenant in her former station of life, the standard was held "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, supra, 279 U.S. 154, 49 S.Ct. 291. Likewise provisions authorizing payments for the life beneficiary's "comfort, maintenance and support," "comfortable maintenance and support," "care, maintenance and support," "comfort and welfare" and similar terms, have been interpreted to provide for the standard of living which the beneficiary had enjoyed at the time of the decedent's death, and as so construed have been held to establish a fixed standard, not solely within the life tenant's discretion, under which the value of the charitable remainder is

ascertainable and deductible. e. g., Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589, 593; Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 1950, 181 F.2d 424; Berry v. Kuhl, 7 Cir., 1949, 174 F.2d 565; Lucas v. Mercantile Trust Co., 8 Cir., 1930, 43 F.2d 39; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710; First National Bank of Birmingham, Ala. v. Snead, 5 Cir., 1928, 24 F.2d 186; Isaacson v. Clauson, D.C. Me.1951, 95 F.Supp. 482.[2] But none of these authorities can help the plaintiff. For here the life beneficiary was given an uncontrolled discretion to determine the amount necessary for her comfortable care, support and maintenance, and the testatrix expressly directed that her judgment in this respect was to be conclusive. This language precludes any fixed objective standard by which the extent of the life tenant's power to invade principal could be ascertained at the date of testatrix' death.

Plaintiff argues, nevertheless, that even if the necessary force of the language utilized by the testatrix be admitted, the trustee would be required under Maine law to assure itself that the life beneficiary was acting in good faith and that *in fact* invasion of corpus was necessary for the comfortable care, support and maintenance of the life benefi-. ciary. It is conceded that the testatrix' language is to be read as nearly as may be in conformity with the law of Maine. Blodget v. Delaney, 1 Cir., 1953, 201 F. 2d 589, 592; Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, 231, certiorari denied 1941, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 539. However, the burden is on the plaintiff to show this Court with reasonable assurance that the rule upon which it relies is at least reasonably well settled by the Maine Courts. See Helvering v. Fitch, 1940, 309 U.S. 149, 156, 60 S.Ct. 427, 84 L.Ed. 665; Price v. Rothensies, D.C.E.D.Pa.1946, 67 F.Supp. 591, 594. No Maine authority has been called to this Court's attention which would require the interpolation of a "good faith" rule into the language of this will. To the contrary, under Maine law the construction of a will is determined by the intention of the testator, which is to be ascertained from the language of the will read in cases of doubt in the light of the circumstances under which it was executed. New England Trust Co. v. Sanger, 1955, 151 Me. 295, 118 A.2d 760; Cassidy v. Murray, 1949, 144 Me. 326, 68 A.2d 390. And in this case the language used is perfectly clear. When the testatrix said that the beneficiary's judgment as to her needs was to be "conclusive," this Court knows of no reason why she should not be held to have meant exactly what she said. To conclude otherwise would require a holding that this language was a mere superfluity. According to the natural import of the words used, the testatrix' expressed intention was to give the life beneficiary the absolute right to request such portion of the principal as she might determine to be necessary for her comfortable care, support and maintenance. A written statement to that effect was all that was to be required of her, and under the terms of the will no one was empowered to question such an expression by her. Cf. Matter of Woollard's Will, 1946, 295 N.Y.

---

2. On the other hand, a fixed standard was found wanting by the Supreme Court in the Merchants National Bank of Boston case, supra [320 U.S. 256, 64 S.Ct. 111], where the principal could have been used for the "comfort, support, maintenance and/or happiness" of the life tenant, and in the Henslee case, supra [335 U.S. 595, 69 S.Ct. 292], where it could have been used for her "pleasure, comfort, and welfare." Similarly, the Court of Appeals for this Circuit has held that provisions authorizing payments for the life tenant's "comfort and pleasure" "need or desire" and "use and benefit" were not limited to any fixed or ascertainable standard. See Industrial Trust Co. v. Commissioner, 1 Cir., 1945, 151 F.2d 592, 169 A.L.R. 144, certiorari denied 1946, 327 U.S. 788, 66 S.Ct. 807, 90 L. Ed. 1014; Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, certiorari denied 1941, 314 U.S. 673, 62 S.Ct. 136, 86 L. Ed. 539; Newton Trust Co. v. Commissioner, supra. Cf. Third National Bank and Trust Co. of Springfield v. United States, 1 Cir., 1956, 228 F.2d 772.

390, 68 N.E.2d 181. Lovett v. Farnham, 1897, 169 Mass. 1, 47 N.E. 246, and Smith v. Paquin, 1950, 325 Mass. 231, 90 N.E.2d 1, upon which plaintiff relies, are not in point. Even if the Maine court would follow the rule indicated by those cases, they hold no more than that a beneficiary or trustee must use good faith in the exercise of a power to invade corpus under a will in which an absolute discretion is not given. Cf. In re Murray, 1946, 142 Me. 24, 45 A.2d 636. They do not stand for the proposition, as contended by plaintiff, that the trustee under a will such as the instant one, in which an absolute discretion is clearly given to the beneficiary, must determine that the beneficiary is acting in good faith before complying with a request for payment of principal, which request states that, in her judgment, such payment is necessary for her comfortable care, support and maintenance.

Admittedly, the possibilities of invasion of corpus in the instant case were remote, and in fact no such invasion took place during the life of the surviving sister. Such factors could become important, however, only if the language of the will were first found to contain a presently ascertainable standard by which to measure the possible exercise of the power of invasion. There was nothing in the language of this will to prevent the life beneficiary from invading principal at her unlimited discretion. She had the power to do so, and it is the existence of the power, and not the practical likelihood of its exercise, that must govern the case. Henslee v. Union Planters National Bank and Trust Company, supra; Blodget v. Delaney, supra; Gammons v. Hassett, supra.

If the loss of the charitable deduction be deemed unfortunate because in retrospect it is apparent that all of the corpus would have gone to the charities, it need only be remembered that " * * * the testator can save estate taxes by giving an indefeasible remainder to charity upon death of the life tenant. But if he chooses to make the gift over contingent upon the non-exercise * * * of such a broad power as here conferred, it does not seem unfair to deny the deduction. The Ithaca Trust case must be considered as going to the very verge of the law, and in the absence of further guidance from the Supreme Court we ought not to extend the doctrine of that case, however logical and appealing the extension might be under the particular facts." Magruder, C. J., concurring, in Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, 234, 235.

The defendant's motion to dismiss is granted.

Judgment is hereby entered for the defendant with costs.