Joseph **SACHTER** and **Manufacturers Hanover Trust Company**, as Executors under the Last Will and Testament of **Bertha M. McClary, Deceased,** Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

No. 65 Civ. 3895.

United States District Court,
S. D. New York.

March 31, 1970.

Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, for plaintiffs; John J. Costello, William S. Rubinstein, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for defendant by Brian J. Gallagher, Asst. U. S. Atty., New York City.

MANSFIELD, District Judge.

In this suit for a refund of estate taxes based on plaintiffs' contention that the estate should have been allowed a charitable deduction pursuant to § 2055(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2055(a),[1] defendant has moved

---

1. "(a) *In general.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the dis-

for summary judgment dismissing the complaint. The issue is whether the will contains standards for a life tenant's invasion of trust principal that render a contingent remainder to charity "presently ascertainable." For the reasons stated below, we hold that it does not and grant the motion. The undisputed facts are as follows:

On March 10, 1960, the decedent, Bertha M. McClary, died a resident of Kings County, New York. She was survived by a 35-year old daughter, Helen Arlene McClary, who was mentally retarded and since 1941 had been institutionalized at the Devereux Foundation (the Foundation), a qualified charitable organization, under a prepaid contract providing for her lifetime care.

The decedent's will was duly admitted to probate by the Surrogate's Court of Kings County. After making the usual provisions for payment of debts, funeral expenses, taxes and certain bequests, the testatrix had recited in the will that the daughter was mentally retarded and a resident of the Foundation pursuant to the 1941 lifetime contract for her care and maintenance, and established a trust for the daughter with a remainder to go to certain charitable organizations. The testatrix's intent was then expressed in part as follows:

"THIRD: Notwithstanding said contract with The Devereux Foundation, it was always the intention of my husband and myself to secure the continued care, maintenance and support of our daughter after our deaths against unforeseen circumstances or emergencies or, if such did not occur, to provide an additional fund while she resided with and was maintained by The Devereux Foundation under said contract which, so far as possible, would add to and enhance the welfare and happiness of our daughter by way of luxuries or travel or anything else which might contribute to her health and peace of mind over and above the care, maintenance and support undertaken by The Devereux Foundation and now being furnished to our daughter under the terms of said contract."

In Paragraph THIRD: a, the Executors were directed to deliver the residue of her estate to her Trustees to be held in trust for the life of the daughter, the income to be paid to the Foundation and applied by it for "such luxuries, travel,

claimer is made before the date prescribed for the filing of the estate tax return)—
(1) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;
(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;
(3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, char-

itable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation; or
(4) to or for the use of any veterans' organization incorporated by Act of Congress or of its departments or local chapters or posts, no part of the net earnings of which inures to the benefit of any private shareholder or individual. For purposes of this subsection, the complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be an irrevocable disclaimer with the same full force and effect as though he had filed such irrevocable disclaimer."

entertainment, vacations, emergencies, or extensive medical requirements, or any like or similar purpose" as the Foundation determines "will add to and enhance the welfare, well-being and happiness of our daughter, even though such other purposes may incidentally benefit other deserving persons in need of or being cared for by the said Foundation or be otherwise beneficial and charitable in nature with respect to helping dependent individuals."

The will (Par. THIRD: b) next gives the Trustees power to invade principal up to $3,500 a year to provide for such "emergency or extensive medical needs", if the income should be insufficient, as might appear necessary to "relieve pain and suffering, prolong the life of our daughter or add to her comfort or recovery." The Trustees were relieved of responsibility for seeing to the proper use of the income by the Foundation but were required to pay semi-annual visits to it and obtain semi-annual accountings from it. The will then contains the following provisions which are of particular pertinence to the issue before us:

"THIRD: * * *

"d. The payments of income, and of principal to the extent hereinabove provided to The Devereux Foundation shall be conditioned upon and shall only be made while our daughter resides with and is being maintained and cared for by The Devereux Foundation under the contract dated August 8, 1941 between my husband and myself, and it. Should said contract in accordance with the rights therein contained be terminated by me, or should The Devereux Foundation fail or refuse or become unable for financial or other reasons to perform its contract for the care, support and maintenance of our daughter, or after my death, if it be determined in the sole and uncontrolled judgment of my Trustees, or survivor of them, that The Devereux Foundation or other home or institution, public or private in which our daughter may be residing, from time to time, is not adequately providing for the care,

support and maintenance of our said daughter, then and in each such case I empower my Trustees or survivor of them to terminate the contract then prevailing, if such contract is then in effect, or exercise such rights in the premises as I would be able to, if alive, and in each such case, to arrange with any other home or institution, public or private, as successively as may be necessary in the judgment of my Trustees or survivor of them for the proper care, maintenance and support of our said daughter, and in any of such events the home or institution, public or private which at the time is providing our said daughter with care, maintenance and support shall be entitled to receive the income from the trust which would otherwise be payable to The Devereux Foundation and *if such income be inadequate, I vest my Trustees, or survivor of them with full discretion to invade and pay over any part or all of the principal as may, in any instance, or from time to time in their judgment, or survivor of them, be desirable, prudent or required, to insure that our daughter is not lacking in any essential or comfort for her well-being and contentment. The powers herein given to my Trustees or the survivor of them, may be exercised at any time and from time to time and their, his or its judgment, as the case may be, shall be conclusive.* (Emphasis added)

* * * * * *

"FIFTH: Realizing in advance that I have vested my Trustees with full authority to invade principal, in the instances specified, which imposes upon the burdens and responsibilities, I release them from liability for payments so made, requesting, however, that in exercising such discretion, my Trustees, at such time, give consideration to the size of the principal and need for future security of our daughter.

* * * * * *

"EIGHTH: I admonish my Trustees, however, that the health, welfare and happiness of our daughter shall always be considered paramount and that is

my express wish and intention that the payments herein authorized and directed for her shall be made or applied with the view of carrying out my intentions and in preference to preserving any part of principal for the remaindermen."

Since her mother's death in 1960 the daughter has continued to reside at the Foundation where she has been cared for pursuant to the 1941 prepaid contract, with the income from the testamentary trust (in addition to Social Security benefits) being paid by the Trustees to the Foundation for the daughter's benefit.

Plaintiffs, as Executors of the mother's estate, claimed a charitable deduction in the amount of $170,460.04. The District Director of Internal Revenue disallowed the deduction, and on March 31, 1964, assessed an estate tax liability which the plaintiffs paid. On August 25, 1964, plaintiffs claimed a refund of the $29,794.54 paid. This action seeks recovery of the claimed refund, plus interest.

■ Upon this motion for summary judgment the question is whether the charitable remainder interest created by the trust meets the requirement prescribed by 26 C.F.R. § 20.2055–2 for deductibility, which is that it be "presently ascertainable, and hence severable from the noncharitable interest." If the charitable remainder interest is presently ascertainable, the motion must be denied and a trial held to determine the actual amount that is deductible. If not, defendant is entitled to summary judgment. The issue is an appropriate type for consideration upon motion for summary judgment because its resolution depends upon construction of the will as of the time of the testatrix's death, without consideration to extrinsic circumstances occurring since that time. Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954); Seubert v. Shaughnessy, 233 F.2d 134 (2d Cir. 1956); see Henslee v. Union Planters Natl. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants Natl. Bank of

Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L. Ed. 647 (1929).

■ The accepted and well established test for resolving the question is to determine whether the language of the will, taken in proper context, provides an objective, measurable, or fixed standard by which one may reliably predict a quantitative limit upon the amount by which the Trustees are empowered to invade the principal. Henslee v. Union Planters Natl. Bank & Trust Co., *supra*; Merchants Natl. Bank v. Commissioner of Internal Revenue, *supra*; Ithaca Trust Co. v. United States, *supra*; Salisbury v. United States, 377 F.2d 700 (2d Cir. 1967). If the language of the will provides such a standard, the charitable interest is "readily ascertainable" and qualifies for deduction. For instance, a provision authorizing invasion of principal in favor of a widow who is a life tenant to the extent necessary to maintain her "in as much comfort as she now enjoys," being referable to her mode of living at the time of the testator's death, establishes a "standard * * * fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, *supra*, 279 U.S. at 154, 49 S.Ct. at 291. On the other hand, a provision for invasion of corpus for a life beneficiary's "comfort, support, maintenance and/or happiness," with the Trustee empowered to exercise his discretion "with liberality" and to "consider her 'welfare, comfort and happiness *prior to claims of residuary* beneficiaries,' " is too vague to permit a sufficiently definite determination of the amounts that might ultimately be received by the charitable remainder interests. Merchants Natl. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

In Salisbury v. United States, 377 F.2d 700 (2d Cir. 1967), the Second Circuit Court of Appeals recently thoroughly reviewed the various types of testamentary provisions that have been construed for the purpose of determining whether the

charitable remainder in each case was "'readily ascertainable" as required by § 2055, including the words "support," "care," "comfort," "benefit," "maintenance," "well being," "welfare," and "happiness." That decision, and many of the cases cited therein, reveals that the courts have strained over the years to find an objective standard wherever possible, frequently by resort to hair-splitting and use of general terms to refer to conditions existing at the time of the testator's death, rather than deny deductability. ·For instance, the words "comfort," "support," "care," "welfare," and "maintenance" have often been interpreted to relate to the standard of living of the life beneficiary at the time of the testator's death which may be ascertained, thus permitting prediction with a fair degree of reliability of the amounts to be paid to the charitable remainder, and upon this basis the remainder has been held readily ascertainable. See, e. g., Union Trust Co. v. Tomlinson, 355 F.2d 40 (5th Cir. 1966); Seubert v. Shaughnessy, 233 F.2d 134 (2d Cir. 1956); Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953); Lincoln Rochester Trust Co. v. Commissioner of Internal Revenue, 181 F.2d 424 (2d Cir. 1940); Hartford-Connecticut Trust Co. v. Eaton, 36 F.2d 710 (2d Cir. 1929). On the other hand, where invasion is permitted to insure the life beneficiary's "pleasure" or "happiness," or the will expressly gives unfettered discretion to trustees to spend unlimited amounts upon the life beneficiary, or enjoins the trustees to prefer the life tenant to the charitable remainders, such language has repeatedly been interpreted as tipping the scales beyond the limit of a measurable standard, even though extrinsic circumstances reveal the unlikelihood of unlimited invasion. See, e. g., Henslee v. Union Planters Natl. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants Natl. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Union Trust Co. v. Tomlinson, 355 F.2d 40 (5th Cir. 1966); Natl. Bank of Commerce of San Antonio v. Scofield, 169 F.2d 145 (5th Cir. 1948), cert. denied 335 U.S. 907, 69 S.Ct. 410, 93 L.Ed. 441 (1949).

Applying these principles to the will before us, we find ourselves forced to hold that it exceeds bounds that would permit us, even using the most liberal standards of interpretation, to construe it as providing a basis for a reliably quantitative limit upon the amount of principal that may be invaded by the Trustees in favor of the testatrix's daughter. At its outset Paragraph THIRD declares it to be the testatrix's intent to "secure the continued care, maintenance and support" of her daughter and to provide an additional fund, while her daughter should be at the Foundation, that "would add to and enhance the welfare and happiness of our daughter by way of luxuries or travel or anything else which might contribute to her health and peace of mind over and above the care, maintenance and support undertaken by The Devereux Foundation." The will then provides that the income paid to the Foundation should be used to provide for "such luxuries, travel, entertainment, vacations, emergencies, or extensive medical requirements or any other like or similar purpose" which the Foundation determines to be appropriate.

If the will had stopped at the above point, the requirements of § 2055 would have been satisfied, since the maximum amount by which the principal could be invaded would have been fixed. However, the will then goes on to provide that if the Foundation for any reason is unable to continue its contract for the care, support and maintenance of the daughter *or* if the Trustees in their "sole and uncontrolled judgment" determine that the Foundation is not adequately providing for the daughter's care, support and maintenance, they may terminate the arrangement with the Foundation and make new arrangements for her care and maintenance elsewhere, in which event the Trustees are given full discretion to invade and pay over "any part or all of the principal" as may be "desirable, prudent or required, to insure that our daughter

is not lacking in any essential or comfort for her well being and contentment."

Thus, the Trustees have been given the discretionary power to invade principal in any amount they see fit for the benefit of the daughter. Since this broad, unfettered authority is not limited by any ascertainable or predictable quantitative standard, we are forced to hold as a matter of law that the language of the will, when read in context, provides for a remainder to charity that is not ascertainable or measurable and hence is not deductible. The remainder is in all material respects the same as those declared non-deductible by the Supreme Court in Henslee v. Union Planters Natl. Bank & Trust Co., *supra*, and Merchants Natl. Bank v. Commissioner of Internal Revenue, *supra*. Under the will, read at the time of the testatrix's death, the Trustees were not precluded from deciding that in their opinion the Foundation's facilities were no longer adequate to insure the daughter's "health," "welfare," "happiness," "well being," and "comfort" (terms found in the will itself), and that much more should now be spent "by way of luxuries or travel or anything else which might contribute to her health and peace of mind." In admonishing the Trustees that the "happiness of our daughter shall always be considered paramount" and that payments toward that purpose should be made "in preference to preserving any part of the principal for the remainderman," the will contains a provision repeatedly declared fatal to deductibility. See Merchants Natl. Bank v. Commissioner of Internal Revenue, *supra*; Henslee v. Union Planters Natl. Bank, *supra*; Salisbury v. United States, *supra*.

The executors contend that summary judgment should be denied for the reason that an issue of fact is presented. They propose to prove that despite the existence of such broad powers of invasion there has been no real likelihood that the powers would ever be exercised. Perhaps it would be more equitable to permit the estate in such circumstances to show that the physical and mental condition of the daughter is such that her standard of living could not possibly result in consumption of the corpus of the trust above and beyond a certain maximum amount, and permit the present value of the balance of the remainder interest to be held deductible. Sympathetic as we may be to such an approach, our hands are tied by controlling decisions of the Supreme Court that have repeatedly limited executors to construction of the will's language at the time of the testatrix's death and rejected proof of the unlikelihood of invasion as irrelevant. In *Henslee, supra,* for instance, the 85-year old life tenant had no need of more funds and had died without any invasion of principal having been made. In *Seubert, supra,* the 74-year old life tenant possessed independent means and wished to preserve the charitable remainder. In McGraw v. United States, 229 F.Supp. 118 (D.W.Va.1964), the 85-year old life beneficiary was hospitalized at fixed rates. In numerous other cases the courts have denied deductibility even though the possibility of invasion was negligible. See, e. g., Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488 (3d Cir. 1964), and Merrill Trust Co. v. United States, 167 F.Supp. 474 (D.Me.1958). The controlling test remains one of whether the will quantitatively limits the power to invade by a fixed objective or measurable standard. Salisbury v. United States, *supra*.

Plaintiffs' contention that the will here is limited by an objective standard for the reason that the Trustees would be required under New York law to avoid any arbitrary favoring of the daughter to the detriment of the charitable remainder must also be rejected. To the contrary, where a will expresses an intent to prefer a life tenant over charitable remaindermen (as is the case here), the Trustees have been encouraged and in some instances ordered to increase invasions of principal. In re Bins' Will, 48 Misc.2d 921, 266 N.Y.S.2d 235 (Surr.Ct. Albany Co.1966); In re Estate of Caro, 47 Misc.2d 217, 262 N.Y.S.2d 45 (Surr.

Ct.N.Y.Co.1965); In re Freeman's Will, 40 Misc.2d 851, 243 N.Y.S.2d 973 (Surr. Ct.Cattaraugus Co.1963); In re Brock's Will, 208 N.Y.S.2d 772 (Surr.Ct.Westchester Co.1960). Thus, the effect of such an instruction is to negate standards that might otherwise prevail, see Blodget v. Delaney, 201 F.2d 589, 593–594 (1st Cir. 1953), in balancing the interests of the life tenant and the charitable remainderman.

Since the value of the charitable remainder interest is as a matter of law not readily ascertainable, defendant's motion for summary judgment is granted.

It is so ordered.