HENRY H. PIERCE, in Equity, *vs.* JOSIAH PIERCE, et al.

Cumberland.   Opinion December 28, 1915.

*Construction.      Implied or precatory trusts.      Intention of testator.*
*Recommendation.      Trust.      Will.*

This case brings before the Law Court for construction portions of the will of Josiah Pierce who resided in England at the time the will was made, and died there December 22, 1913. The will was drafted by the testator himself, an experienced lawyer.

1. In the interpretation of wills the cardinal rule, to which all other rules must bend, is that the intention of the testator must prevail, provided it is consistent with the rules of law; and that intention is to be found in an examination of all parts of the will in the light of the existing circumstances.

2. The crucial test to determine if a trust is created by precatory words is whether the testator actually intended by his words to control the action of his legatee by imposing an imperative duty upon him in respect to the property, or whether he intended his words to be merely advisory, leaving it to the discretion of the legatee whether that advice should be followed or not.

3. Whenever a testamentary disposition clearly indicates an intention to give the donee an absolute and unrestricted ownership of the property, any subsequent provision tending to impose restraint upon the alienation of such an estate is void.

4. Precatory words in a will should not be accorded such force and meaning as will deprive the donee of his beneficial use and full right of disposal of a gift otherwise absolute, unless the court can gather from the rest of the will and the attending circumstances, an intention of the testator which is reconcilable with the idea of a trust imposed upon the legal estate devised.

5. It is not to be presumed that a testator intended as imperative a request to his devisee which is incapable of being effectively carried out. Precatory words will not be held to create a trust that cannot be practicably executed.

6. Held: That the testator gave to his grandson, under clause 4 of the will, an absolute and unquallified estate in the property therein devised to him; and that the language of clause 5, considered in the light of the previous absolute devise of the real estate made in the same will, cannot be accorded the force of a command.

7. The conclusion of the court, therefore, is that the defendant Josiah Pierce had the right to make the sale of the growth to the defendant Warren, which is complained of, without first offering the property to the plaintiff at the value at which the property was last previously assessed for the purpose of taxation as requested by the testator in clause 5 of this will.

On report. Bill dismissed with costs.

Bill in equity by Henry H. Pierce against Josiah Pierce and Hugh M. Warren, for the construction of the will of Josiah Pierce. Answers and replication were filed in the case. By agreement of the parties to the cause, it was reported to the Law Court upon the amended bill, answer and agreed statement of facts; and evidence filed herewith, for determination, upon so much of the evidence as may be held by the court to be legally admissible, the court will render such judgment as the law and facts may require.

The case is stated in the opinion.

*Libby, Robinson & Ives,* for complainant.

*Richard Webb,* for respondents.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

KING, J. This case brings before us for construction portions of the will of Josiah Pierce who resided in England at the time the will was made, and died there December 22, 1913.

The provisions of the will involved are:

"2. I give devise and bequeath to my brother George Washington Pierce the use and occupation of all my real estate situated in the Town of Baldwin in Maine aforesaid together with all my furniture books and other personal effects upon the said premises for and during his life without power to alienate or encumber the same in any manner or to cut or permit to be cut any wood or timber

thereon except such as may be necessary for repairs thereof or for fuel thereon.

3. I give to my trustee all moneys belonging due or owing to me in the State of Maine upon trust to get in and receive the same and to apply the income thereof or if necessary the Capital Firstly in discharge of any proper fees and expenses incurred by my trustee and taxes in relation to the said real estate or otherwise in connection with this trust Secondly in payment during the life of my said brother George Washington Pierce of all just taxes insurance repairs and other necessary outgoings connected with my said real estate and Thirdly in payment of the maintenance of my said brother George Washington Pierce during his life.

4. From and after the decease of my said brother George Washington Pierce and subject to the above named tenancy in his favor during his life I give devise and bequeath all the said real estate furniture personal effects moneys and property included in Clauses 2 and 3 hereof to my grandson Josiah Pierce absolutely.

5. Should my said grandson Josiah Pierce or his Guardian or Guardians during his minority decide to sell the said real estate then I request him or them to first offer the property to the sons of my brother Lewis Pierce in order of seniority at the value at which the property was last previously assessed for the purposes of taxation. And in any future sale or transfer of the said property I request that provision shall be made for the preservation of the family burial ground and the monuments thereon."

George Washington Pierce predeceased the testator. The Baldwin real estate consists of about 350 acres all well wooded with timber, excepting about 20 acres. September 3, 1914, the defendant Josiah Pierce, the grandson and devisee of the testator, executed and delivered to the defendant Warren, for a consideration of $15,500, a deed of all the standing timber and other wood growth upon said real estate, excepting the timber upon a small part thereof upon which are located the buildings and the family burial ground. The deed to Warren was made and delivered without the knowledge of the plaintiff, who is the eldest son of Lewis Pierce, and without any offer of the property to him at the value at which it was last previously assessed for the purposes of taxation, which was $7,600. The plaintiff, thereupon, brought this bill in equity the object of which is to have Warren enjoined from cutting or injuring any of

the growth on the premises, to have the deed of the growth declared void and cancelled, and to have the premises conveyed to the plaintiff upon his payment of the $7,600, with such provision as the court may deem proper for the preservation of the family burial ground and the monuments therein.

The question presented is as to the meaning of clause 5 of the will. The plaintiff claims that a trust was therein created in his favor in respect to the real estate. Is the language there used mandatory and imperative, or merely suggestive and advisory? Does it impose upon the devisee in clause 4 a legal duty towards the plaintiff in respect to the real estate divised, or does it only express the testator's advise and recommendation to the devisee which he was not bound to follow?

The law of England is substantially the same as that of this State, as to the rules to be applied in the interpretation of wills, and as to the doctrine of implied or precatory trusts. That doctrine was fully and clearly stated in the recent case of *Clifford* v. *Stewart,* 95 Maine, 38, and need not here be discussed at length. It is beyond doubt that in the interpretation of wills, in some cases, words of recommendation, request, desire, entreaty, hope or confidence, have been held sufficient to create a trust, and that in other cases the same or similar words and expressions, and even words ordinarily importing command and obligation, have been held to be advisory only and not to create a trust. The cardinal rule, as is often said, to which all other rules must bend, is that the intention of the testator must prevail, provided it is consistent with the rules of law. And that intention is to be found in an examination of all parts of the will in the light of the existing circumstances. The interpretation of one will may be of little value as a guide for the interpretation of another though more or less similar; for each will differs in its scheme, as well as in the situation and circumstances of the testator. "You must take the will which you have to construe and see what it means, and if you come to the conclusion that no trust was intended, you say so, although previous judges have said the contrary on some wills more or less similar to the one which you have to construe." Lindley, L. J. in In re Hamilton, (1895) 2 Ch. 370, 373. "The crucial test after all is whether the testator actually intended his language to be imperative, whether he intended to govern and control the action of the legatee, to impose an obligation or duty upon

him in the use of the property, or whether he intended his words to be merely advisory, no matter how urgently expressed, still leaving it to the discretion of the legatee whether that advise should be followed or not." *Clifford* v. *Stewart,* supra.

Another rule to be observed is, that whenever a testamentary disposition clearly indicates an intention to give the donee an absolute and unrestricted ownership of the property, any subsequent provision tending to impose a restraint upon the alienation of such an estate is void. *Turner* v. *Hallowell Savings Institution,* 76 Maine, 527. Precatory words in a will should not be accorded such force and meaning as will deprive the donee of his beneficial use and full right of disposal of a gift otherwise absolute, unless the court can gather from the rest of the will and the attending circumstances an intention of the testator which is reconcilable with the idea of a trust imposed upon the legal estate devised. "When to impose such a trust would be to nullify previous expressions in the will and to create a repugnacy between its different parts, then the rules of construction forbid the attempt." *Clay* v. *Wood,* 153 N. Y., 134, 142.

Applying these rules to the case at bar we think the plaintiff's contention is not sustainable.

The testator was 79 years of age when the will was executed, and had been deprived of his eyesight for some years. He was a lawyer of experience, and dictated the will to his wife. Its language and provisions clearly indicate that he was not inexperienced in drafting testamentary dispositions, and it is reasonable to infer that he understood the rules applicable to their construction.

The first five clauses of the will relate to his real and personal property in Maine. By the subsequent provisions, as modified by the codicile, all the remainder of his estate is given to his widow for life. Upon her death one-third of the estate is to go to his daughter, one-third in equal shares to his two grandsons (the defendant and his brother) sons of the testator's deceased son, and the widow is given a power to dispose of the remaining third by her will.

Independent of the request contained in clause 5, there is nothing in the will to indicate any intention of the testator to make the sons of his brother Lewis partakers of his bounty. They are not otherwise referred to by him. And his relationship to them is not sufficient we think to indicate that he felt such an interest in them, or

sense of duty to provide for them, as would make it reasonably certain that he intended by the request contained in clause 5 to make an imperative testamentary provision for them.

Nor do we perceive any sufficient proof that he intended the provisions of clause 5 to be imperative to effectuate a purpose that the ownership of the real estate should not pass out of the Pierce family. The request in clause 5 tends only to restrict the sale of the property by his devisee. It does not prevent its unlimited transfer by will or descent. And it does not apply at all to this plaintiff should he become the owner of the property under the provisions of clause 5. He would then be at liberty to sell the property, in whole or in part, to whomsoever he chose. It does not seem reasonable, therefore, that the testator intended to clothe his otherwise absolute devise of this real estate to his grandson and namesake with a trust that would deprive him of the right to its beneficial enjoyment and full power to dispose of it, and leave his nephews, to whom the property might pass under the alleged trust, wholly unrestricted in their power to use and alienate it.

Again it is not to be presumed that a testator intended as imperative a request to his devisee which is found to be unreasonable and incapable of being effectively carried out. Precatory words will not be held to create a trust which can not be executed. The provisions of clause 5 are not feasible, except perhaps in the one contingency that the devisee should decide to sell the entire property as a whole. Is it reasonable to suppose that if the devisee decided to sell a specific portion of the real estate the assessed valuation of that portion could have been ascertained? Certainly not the assessed value of the growth on a part of the land, which he did in this case decide to sell. Had he decided to sell some ten acre lot, or the growth thereon, would it not have been impossible to have effectively carried out the request in clause 5 in respect to such proposed sale? Such property is usually assessed for purposes of taxation as a whole; certainly the growth is not assessed separately from the land.

But the learned counsel for the plaintiff urges that the devisee decided to sell the whole property, having sold in fact that part which made up its chief value, and offered to sell the rest, hence the contingency contemplated by the testator arose and the provisions of clause 5 became applicable; and possible to be carried out. But

that does not remove the infirmity of the request contained in clause 5, unless it be held that the testator intended that request to be carried out *only* in case the devisee should decide to sell the property as a whole. But that construction would defeat the plaintiff's claim; and he confidently argues against it.

The conclusion follows, of course, that if the devisee could not make the sale of the growth in question without complying with the request in clause 5, he could not sell any part or portion of the property however small without complying with that request. If he could not sell the stumpage of the growth, then manfestly he could not accomplish the same end by cutting the growth and selling the logs and lumber. And such is the plaintiff's contention as urged in his brief. We do not think the testator intended to thus limit and restrict his grandson in the use and enjoyment of the real estate devised to him in clause 4. We are unable to discover such an intention from the whole will and the existing circmustances in the light of which it is to be construed.

And, moreover, we are constrained to the conclusion that the testator gave to his grandson Josiah Pierce, under clause 4 of the will, an absolute and unqualified estate in the property therein devised to him. The material words of the devise are: "I give devise and bequeath all the said real estate furniture personal effects moneys and property included in clauses 2 and 3 hereof to my grandson Josiah Pierce *absolutely.*" In construing the language of that devise it must be kept in mind that it was the language selected by the testator himself who was an experienced lawyer. We attach importance to his use of the word "absolutely". Being a lawyer, it is highly improbable that he would have used the word "absolutely" in that connection in any other sense than its usual and ordinary meaning, signifying, free from limitations, uncontrolled, and without condition. If he intended his devise to his grandson to be limited, on condition, and subject to restrictions as to its use and enjoyment, is it reasonable to conclude that he, being a lawyer of experience, would have said that he made the devise "absolutely"? We think not.

In our view of clause 4 of the will, therefore, we must read the language of clause 5 in the light of a previous absolute devise of the real estate to the defendant Josiah Pierce made in the same will.

So reading it we cannot accord to the testator's request therein expressed the force of a command. To do that would be to find that the testator intended thereby to nullify his absolute gift of the property to his grandson as previously made in the same will, an attempt which the well settled rules of construction forbid.

Our conclusion, therefore, is that the defendant Josiah Pierce had the right to make the sale of the growth to the defendant Warren, which is complained of, without first offering the property to the plaintiff at the value at which the property was last previously assessed for the purposes of taxation as requested by the testator in clause 5 of his will. Accordingly the entry will be,

*Bill dismissed with costs.*