**CANAL NATIONAL BANK, surviving Executor and Trustee under the Will of Frank B. Emery, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 8–144.**

United States District Court
D. Maine, S. D.

July 25, 1966.

---

Raymond E. Jensen, George J. Mitchell, Donald G. Lowry, Portland, Me., for plaintiff.

Lloyd P. LaFountain, U. S. Atty., Portland, Me., Rufus E. Stetson, Jr., Tax Division, Dept. of Justice, Jack S. Levin, Washington, D. C., for defendant.

GIGNOUX, District Judge.

Plaintiff is the surviving executor and trustee of the estate of Frank B. Emery.

It brought this action for refund of $6,157.86 federal income taxes, and assessed interest in the amount of $929.84, paid under protest for the fiscal years ended March 31, 1961, 1962 and 1963.[1] The question presented is whether plaintiff is entitled to charitable deductions for undistributed capital gains in the years involved as income permanently set aside for charitable purposes within the meaning of Section 642(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 642(c).[2]

Frank B. Emery died testate on May 3, 1959. After making certain specific bequests and creating a marital trust of one-half of his adjusted gross estate, the decedent, in Clause Fourth of his will, left the residue of his estate in trust, to pay the net income to his wife, Catherine F. Emery, for life.[3] Clause Fourth of the will further provided that, upon Mrs. Emery's death, the trustees were

" * * * to make the following payments from the income (of the trust):

"A. To my nephew, Clarence L. Emery, the sum of Two Hundred Dollars ($200) monthly so long as he may live,

1. The jurisdiction of this Court is based upon 28 U.S.C. § 1346(a) (1).

2. Section 642(c) of the 1954 Code provides as follows:

(c) *Deduction for amounts paid or permanently set aside for a charitable purpose.*—In the case of an estate or trust (other than a trust meeting the specifications of subpart B) there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. For this purpose, to the extent that such amount consists of gain from the sale or exchange of capital assets held for more than 6 months, proper adjustment of the deduction otherwise allowable under this subsection shall be made for any deduction allowable to the estate or trust under section 1202 (relating to deduction for excess of capital gains over capital losses). In the case of a trust, the deduction allowed by this subsection shall be subject to section 681 (relating to unrelated business income and prohibited transactions).

3. In Clause Fifth of his will Mr. Emery also authorized his trustees to make payments to his wife from the principal of the trust if at any time during her life they were of the opinion that the trust income was not sufficient for her "proper support and maintenance." The government concedes that this provision for invasion of principal for the wife's benefit does not make the gift to charity so uncertain as to defeat the claimed charitable deductions. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953); Isaacson v. Clauson, 95 F.Supp. 482 (D. Me.1951). See n. 11, infra.

628

and after his death, One Hundred Dollars ($100) monthly to his wife, Helen Williamson Emery, for her life, or until her remarriage, and the sum of Fifty Dollars ($50) monthly to his daughter, Ruth Evvie Emery, for her life, and the sum of Fifty Dollars ($50) monthly to his daughter, Eleanor Jean Emery, for her life. On the death of their mother, she having survived their father, or on his death, if their mother does not survive him, said monthly payments to my said two grandnieces shall be increased to One Hundred Dollars ($100) each, and I further authorize my Trustees to pay such increased payments during the lifetime of their mother, if necessary, in the sole discretion of my Trustees, to provide for their comfortable support and maintenance, including extraordinary bills for medical or hospital care and nursing.

"B. Since unexpected misfortune cannot be foreseen, to my aunt, Susan Emery Rodick, of Portland, Maine, and to my cousins, Ralph W. Emery, of Newton, Massachusetts, Philip Benjamin of Philadelphia, Pennsylvania, and Sumner S. Clark, of Cape Elizabeth, Maine, the sum of One Hundred Dollars ($100) each, monthly, if and so long as my Trustees in their sole discretion, deem such payments necessary for the comfortable support and maintenance of any or all of them.

"C. To my wife's brother, Clarence Fitzpatrick, of Munfordville, Kentucky, the sum of Fifty Dollars ($50) monthly so long as he may live.

"D. To my wife's niece, Aline Brent Warren, of Louisville, Kentucky, the sum of Fifty Dollars ($50) monthly so long as she may live.

"E. To my wife's niece, Laura Wilkins Schonemann, of Louisville, Kentucky, the sum of One Hundred Dollars ($100) monthly so long as she may live.

"F. In the event that my Trustees find that the monthly payments of income provided for in this paragraph FOURTH of this Will would exceed the income of said trust available for distribution, the payments to each beneficiary shall be reduced proportionately, but such reduction may be made up later if excess income becomes available. I authorize my Trustees, however, subject to the approval of the Probate Court, to increase or decrease the payments provided for in this paragraph FOURTH in case there should be available unused income or an increase in cost of living or if the needs of the beneficiaries for comfortable support should change.

"G. In case the bequest to my household employees in paragraph SECOND A of this Will is ineffective because of the survival of my wife, then, on my wife's death, to each of the household employees in our service or in my wife's service at the time of her death, a bequest on the same basis as contained in said paragraph SECOND A of this Will.[4]

"H. All the residue and remainder of the net income of said trust to use for charitable objects and purposes as my Trustee may in its sole discretion from time to time deem desirable to carry out the purposes of this Will. I particularly suggest to my Trustee my interest in such charitable purposes as giving aid by means of loans to worthy and needy young people to help them to obtain an education to fit them for their life's work, such as medical, Divinity, engineering, and other professional education (not, however, limiting my trustee by this enumeration)

4. In Clause Second of his will, the decedent made certain specific bequests in the event his wife did not survive him, including, in Clause Second A, a bequest "A. To each of the household employees, who is in my service at the time of my death, Five Hundred Dollars ($500) for every year and a fraction of a year greater than one-half year each such employee has been continuously in my employ, provided that no amount shall be payable to any such employee unless such employee has been in my service for one and one-half years."

and to make a start in business or professional life; also my interest in charitable organizations for the relief or care of needy children or the aid of handicapped needy persons trying but unable to help themselves, or the relief or care of other needy persons, but preferably those not largely cared for by governmental pension or aid or organized charitable aid. In giving aid to Christian charitable organizations, objects or purposes, it is my wish that preference be given to Protestant Christian organizations, objects and purposes, and to those organizations without substantially sustaining memberships. It is further my wish that preference be given, whenever possible, to the aid of needy or distressed and worthy relatives of myself or my wife. In case the net income available for the purposes of this paragraph shall at any time appear to my Trustee inadequate to accomplish the desired charitable purpose, my Trustee may at its option accumulate income for such period as it deems desirable. If the principal of my trust estate should, at my death or before or at the death of the last beneficiary of paragraphs A to E, inclusive, be so reduced as to make the accomplishment of the purposes of my trust impossible, my Trustee may petition the proper Court for a termination of the trust, and in case of such termination my residuary estate shall be distributed one-half to said Clarence L. Emery, or his heirs, and the remaining one-half to said Aline Brent Warren, Clarence Fitzpatrick and Laura W. Schonemann, or if any one or two of these three are deceased, his or her share to the survivors, equally, and if all of said last named three are deceased, their shares shall go to the Salvation Army."

Mr. Emery was survived by his wife, Catherine F. Emery, who died on September 2, 1962. He and Mrs. Emery had no children or other dependents. At the time of Mr. Emery's death, Mrs. Emery was 59 years of age, with a life expectancy of 22.4 years, and the ages of the other named beneficiaries with possible life interests in the residuary trust created by Clause Fourth of Mr. Emery's will were as follows:

| Name | Age |
| --- | --- |
| Clarence L. Emery | Deceased |
| Helen W. Emery | 59 |
| Ruth E. Emery | 40 |
| Eleanor J. Emery | 38 |
| Susan E. Rodick | Deceased |
| Ralph W. Emery | 77 |
| Philip Benjamin | 58 |
| Sumner S. Clark | 42 |
| Clarence Fitzpatrick | 65 |
| Aline B. Warren | 56 |
| Laura W. Schonemann | 51 |

When Mr. Emery died, the principal of the residuary trust amounted to approximately $140,000. On March 31, 1961, the principal amounted to $145,037.75; on March 31, 1962, it was $182,901.00; and on March 31, 1963, it was $180,865.41. The gross income of the residuary trust in the fiscal year 1961 was $7,443.40 and in the fiscal year 1962 was $9,818.93. The entire net income for both of these years was distributed to Mrs. Emery. The gross income of the residuary trust in the fiscal year 1963 was $5,502.05. Of this amount $2,814.73 was paid over to Mrs. Emery or to her estate, and payments aggregating $2,000 were made to the six surviving life beneficiaries named in Clause Fourth A, C, D and E of the will.[5] No payment was

---

5. The three surviving beneficiaries named in Clause Fourth B declined to receive any payments. $324.15 was also paid to Mrs. Emery and plaintiff as trustees' fees in fiscal 1963, and a $20 filing fee was paid. $343.17 was not distributed and remained as income cash on hand as of March 31, 1963.

Under the terms of the will, the six life beneficiaries named in Clause Fourth A, C, D and E were designated to receive a total of $400 per month, beginning at the date of Mrs. Emery's death. Since Mrs. Emery died on September 2, 1962, a period of seven months had elapsed as of March 31, 1963, so that the total amount payable to the six beneficiaries was $2,800. Because of the lack of income cash available for distribution, the trustee, in accordance with the provi-

made to any charitable organization during the three years involved in this proceeding.

During each of the fiscal years 1961, 1962 and 1963, the residuary trust realized long-term capital gains from the sale of securities, which were added to the corpus of the trust.[6] In its federal income tax returns for these years, plaintiff claimed as deductions from gross income the amounts of these capital gains as income permanently set aside for charitable purposes under Section 642(c) of the 1954 Code. The Commissioner of Internal Revenue disallowed the claimed deductions. Plaintiff paid the resulting deficiencies, with assessed interest, and after its claim for refund was disallowed, commenced this action.[7]

The case presents two questions, the first of which is whether the charitable purposes of the trust qualify as such under Section 642(c). This question must be answered in the affirmative. It does not require extended discussion. The government's attack is directed to the provision in Clause Fourth H of the will in which Mr. Emery expressed his

"wish" that in carrying out the charitable purposes of the trust "preference be given, whenever possible, to the aid of needy or distressed and worthy relatives of myself or my wife." But this language is clearly precatory and in no way binding upon the trustee. Cf. Grigson v. Harding, 154 Me. 146, 157–158, 144 A.2d 870 (1958); Pierce v. Pierce, 114 Me. 311, 96 A. 143 (1915). Furthermore, it is well settled that a charitable deduction will not be defeated because a preference is to be given in the selection of beneficiaries to relatives of the testator who otherwise qualify as objects of legitimate charitable purposes. Commonwealth Trust Co. of Pittsburgh v. Granger, 57 F.Supp. 502 (W.D.Pa.1944); Estate of Annie Sells, 10 T.C. 692 (1948); Estate of Agnes Robinson, 1 T.C. 19 (1942); cf. Schoellkopf v. United States, 124 F.2d 982, 985 (2d Cir. 1942).[8]

The second question presents more difficulty. It is whether the claimed deduction is defeated because the value of the charitable bequest could not be definitely ascertained as of the date the tax was due, so as to qualify for the charitable deduction. On this issue,

sions of Clause Fourth F made a proportionate reduction in the payments to each beneficiary, so that in fact the total amount received by them was only $2,000.

6. The long-term capital gains realized by the trust during each of the years involved were as follows: $29,732.55 in fiscal 1961; $6,714.03 in fiscal 1962; and $10,011.94 in fiscal 1963.

7. Plaintiff paid the following amounts in assessed taxes and interest:

| Fiscal Year | Tax Paid on Capital Gains | Interest Paid |
|---|---|---|
| 1961 | $4,449.77 | $792.61 |
| 1962 | 632.54 | 74.72 |
| 1963 | 1,075.55 | 62.51 |

8. Similarly, a bequest in trust for charitable purposes with a preference to be given to relatives of the testator who fall within the charitable class creates a valid charitable trust. Dexter v. President, etc. of Harvard College, 176 Mass. 192, 57 N.E. 371 (1900); Darcy v. Kelley, 153 Mass. 433, 26 N.E. 1110 (1891); In re MacDowell's Will, 217 N.Y. 454, 112 N.E. 177, L.R.A.1916E, 1246 (1916); 4 Scott, Trusts § 375.3 at 2721 (2d ed. 1956); Restatement (Second), Trusts § 375 Comment d.

The cases of Estate of Philip Dorsey, 19 T.C. 493 (1952); DuBois v. Commissioner, 31 B.T.A. 239 (1934) and James Sprunt Benevolent Trust et al. v. Commissioner, 20 B.T.A. 19 (1930), cited by the government, are plainly distinguishable. In Dorsey the bequest was made exclusively to benefit relatives of the testator. In DuBois and Sprunt the court found that the trust was established primarily for private, and not for public charitable purposes.

plaintiff contends that the language of the will provides a sufficiently definite standard to make the value of the charitable bequest ascertainable, and since the possibility that the bequest to charity will be defeated is so remote as to be negligible,[9] the charitable bequest qualifies for a deduction under the rule of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). The government's position, on the other hand, is that the bequest to household employees in Clause Fourth G of the will and the power of termination conferred upon the trustee by Clause Fourth H made it impossible to determine with any degree of certainty, as of the dates of the taxable events involved,[10] what amounts, if any, would ultimately go to charity, and that therefore the value of the charitable bequest was not definitely ascertainable, and is not deductible under the rule of Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943) and Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949).

The Supreme Court has spoken clearly and explicitly as to the test that must be used in this type of case for determining whether a bequest to charity is sufficiently definite and ascertainable to qualify for the charitable deduction. Thus, in Ithaca Trust Co. v. United States, supra, the will permitted the trustee to pay from principal any sum "that may be necessary to suitably maintain her (the widow) in as much comfort as she now enjoys." The Supreme Court held that "[t]he standard was fixed in fact and capable of being stated in definite terms of money," and since the income of the estate "was more than sufficient to maintain the widow as required," the claimed deduction for the charitable remainder was properly allowed. 279 U.S. at 154, 49 S.Ct. at 291.[11]

9. See Treas.Reg. 20.2055–2(b). While these regulations and most of the decided cases dealing with this question relate not to Section 642(c), but to the parallel estate tax provision, Section 2055(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2055(a), the Supreme Court has recognized that the same principles are applicable in determining whether an estate or trust is entitled to a charitable deduction for income tax purposes. Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 263, 64 S.Ct. 108, 88 L.Ed. 35 (1943). See Isaacson v. Clauson, 95 F.Supp. 482, 483, n. 2 (D.Me.1951).

10. The government concedes that the bequest to household employees cannot affect the deduction claimed for the year ended March 31, 1963, inasmuch as Mrs. Emery died during that year and the number of employees who would be entitled to this bequest was definitely ascertainable as of March 31, 1963. In fact, neither Mr. nor Mrs. Emery had any household employees in their employ at the dates of their respective deaths.

11. In numerous cases involving powers to invade principal, it has been held, under authority of the Ithaca Trust Co. case, that the standard provided by the will was sufficiently definite and fixed so that the deduction for the value of the charitable remainder has been allowed. See, e. g., Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) ("comfort and welfare"); Lincoln Rochester Trust Co. v. Commissioner of Internal Revenue, 181 F.2d 424 (2d Cir. 1950) ("proper care, support and maintenance"); Berry v. Kuhl, 174 F.2d 565 (7th Cir. 1949) ("[medical] treatment, support or maintenance"); Lucas v. Mercantile Trust Co., 43 F.2d 39 (8th Cir. 1930) ("comfort, maintenance and support"); Hartford-Conn. Trust Co. v. Eaton, 36 F.2d 710 (2d Cir. 1929) ("comfortable maintenance and support"); First Nat. Bank of Birmingham, Ala. v. Snead, 24 F.2d 186 (5th Cir. 1928) ("proper support and comfort"); Isaacson v. Clauson, 95 F. Supp. 482 (D.Me.1951) ("proper support and maintenance"). Indeed, some cases seem to go even further than a standard based upon "comfort and support." See, e. g., Bowers v. South Carolina Nat. Bank of Greenville, 228 F.2d 4 (4th Cir. 1955) ("all necessary medical and hospital expenses"); Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954) ("emergencies arising from sickness, accident or failure of investments"); Commissioner of Internal

On the other hand, in Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, where the will permitted invasion of principal for "the comfort, support, maintenance, and/or happiness of my said wife," and the trustee was directed to exercise its discretion "with liberality to my said wife," the Supreme Court disallowed the charitable deduction, saying that "the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction," and that there were "elements of speculation too large to be overcome." 320 U.S. at 262, 263, 64 S.Ct. at 110, 111, 112. In that case, the taxpayer argued that there was little possibility that the testator's widow, who was 67 years old with substantial independent means and no dependent children, would exhaust the trust estate in which charity had a remainder. The court, nevertheless, held that,

"For a deduction * * * to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available * * *. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private

beneficiary or reach the charity are thus accurately calculable." 320 U.S. at 261, 64 S.Ct. at 111.

So also, in Henslee v. Union Planters Nat. Bank & Trust Co., supra, the Supreme Court disallowed the charitable deduction where the terms of the will were "ineffective to guarantee preservation of any predictable fraction of the corpus for disposition * * *" to charity. 335 U.S. at 598, n. 3, 69 S.Ct. at 292. In Henslee, invasion of principal was permitted for the "pleasure, comfort and welfare" of the testator's mother, and the testator directed that "[t]he first object to be accomplished * * * is to take care of and provide for my mother in such manner as she may desire." As in Merchants Nat. Bank of Boston, the court recognized the unlikelihood that the testator's mother, an 85 year old woman of "moderate needs and without dependents" who had substantial "independent investments," would "abandon her customary frugality and squander her son's wealth." 335 U.S. at 597, 599, 69 S.Ct. at 292. But the court said,

" * * * [T]hough there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the charitable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest 'presently ascertainable.' " 335 U.S. at 599, 69 S.Ct. at 292.[12]

Revenue v. Wells Fargo Bank and Union Trust Co., 145 F.2d 130 (9th Cir. 1944) ("sickness, accident, want or other emergency").

12. The Court of Appeals for this Circuit has held that provisions authorizing payments of principal for the life tenant's "use and benefit," "comfort and pleasure," and "need or desire" were not limited by any fixed or ascertainable

standard within the rule of the Merchants Nat. Bank of Boston and Henslee cases. See Newton Trust Co. v. Commissioner of Internal Revenue, 160 F.2d 175 (1st Cir. 1947) ("use and benefit"); Industrial Trust Co. v. Commissioner, 151 F.2d 592, 169 A.L.R. 144 (1st Cir. 1945), cert. denied, 327 U.S. 788, 66 S.Ct. 807, 90 L.Ed. 1014 (1946) ("comfort and pleasure"); Gammons v. Has-

Finally, in the most recent case on this subject, Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955), the Supreme Court held that no deduction was allowable on account of a charitable bequest which was to take effect only if the decedent's childless 27 year old daughter died without descendants surviving her and her 62 year old mother.[13] The Court reiterated that, "Where the principal of a bequest to charity * * * may be invaded for private purposes, it is only the ascertainable and assured balance of the bequest to charity that is recognized for a tax deduction." 348 U.S. at 194, 75 S.Ct. at 233. The court further noted that the deduction is restricted to "computations of deferred, but assured, bequests," and that there exists no statutory authority for the deduction of any part of a conditional bequest to charity "where there is no assurance that charity will receive the bequest or some determinable part of it." 348 U.S. at 199, 75 S.Ct. at 235. In Sternberger, the Supreme Court also recognized that the allowance of a tax deduction when a condition stated in the will might defeat the charitable bequest "would open a door to easy abuse. The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax deductions without assuring benefits to charity." 348 U.S. at 198, 75 S.Ct. at 235.

The Supreme Court cases which have been discussed also make clear the procedure that is to be followed in these cases in determining whether a bequest to charity is so uncertain and indefinite that no deduction will be allowed. The first inquiry must be whether the will itself contains a sufficiently definite standard to make the value of the charitable bequest ascertainable. If it does not, no deduction is allowable. See, e. g., Henslee v. Union Planters Nat. Bank and Trust Co., supra; Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra. If it does, but only if it does, the court may then proceed to the second inquiry, which is whether the possibility that the bequest to charity will be defeated is negligible. See, e. g., Ithaca Trust Co. v. United States, supra. The governing rule has been succinctly set out by the Court of Appeals for this Circuit as follows:

"It would seem that a proper analysis of these powers of invasion cases in conformity with the statute and the regulations must rest on a consideration of two basic propositions. The first problem would concern the measurability of the possible exercise of the power in terms of a definitely ascertainable standard. When no calculable standard is present, no deduction should be allowed since the value of the charitable remainder cannot then be ascertained. If a fixed standard is ascertainable, then as the second

---

sett, 121 F.2d 229 (1st Cir.), cert. denied, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 539 (1941) ("need or desire"). And in Merrill Trust Co. v. United States, 167 F.Supp. 474 (D.Me.1958), this Court held the deduction was properly disallowed where the will permitted invasion of principal for the life beneficiary's "comfortable care, support and maintenance, *and it provides that 'her judgment in this respect is to be conclusive.'*" (Emphasis supplied.)

13. To the same effect see Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928) (charitable bequest conditional upon death of decedent's 15 year old niece, without issue, before reaching the age of 40); United

States v. Dean, 224 F.2d 26 (1st Cir. 1955) (charitable bequest contingent upon decedent's 82 year old sister predeceasing both the decedent's 67 year old daughter and her 68 year old daughter-in-law); Newton Trust Co. v. Commissioner of Internal Revenue, 160 F.2d 175 (1st Cir. 1947) (charitable bequest contingent upon decedent's 68 year old brother surviving his 68 year old widow). Compare United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934) (charitable bequest conditional upon the death, without issue, of decedent's childless 50 year old daughter, who had undergone an operation rendering her incapable of bearing children; deduction allowed).

step in any analysis it becomes necessary to examine the remoteness of invasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive." Newton Trust Co. v. Commissioner of Internal Revenue, 160 F.2d 175, 178–179 (1st Cir. 1947).

See also Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 290–291 (2d Cir. 1954); Merrill Trust Co. v. United States, 167 F.Supp. 474, 478 (D.Me. 1958).[14]

■ Applying these accepted principles to the present case, the Court must agree with the government that the bequest to household employees in Clause Fourth G of Mr. Emery's will and the power of termination in Clause Fourth H made it impossible to ascertain with reasonable certainty, as of the dates of the taxable events involved, the value of the bequest to the charitable remaindermen, so that the claimed charitable deductions were properly disallowed. In Clause Fourth G, Mr. Emery provided for the payment to each household employee in Mrs. Emery's employ at the time of her death of $500 for each year of his or her service. Obviously, it was impossible to ascertain, prior to Mrs. Emery's death,

the total amount which would be payable under this provision of the will, for until Mrs. Emery's death, any estimate of the number of employees she might hire and the number of years they might serve was "mere speculation." Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 72 L.Ed. 667 (1928). Nor is it material that in fact Mrs. Emery had no household employees in her employ when she died. Under the terms of the will, the amount permanently set aside for charitable purposes could not be measured while she was living, because she might have subsequently employed household servants who, some ten or twenty years later, would have been entitled to substantial legacies.[15] As plaintiff's actuarial expert testified, there is no method known to actuarial science for estimating, during Mrs. Emery's life, how many household employees she might have in her service at the time of her death and how long they might have served, and it was thus impossible to calculate with any degree of precision, either as of March 31, 1961, or as of March 31, 1962,[16] how much of the principal of the trust might be paid out under Clause Fourth G.[17] The salient fact is that the extent to which the principal of the trust might be used to satisfy the bequest to household employees was not, prior to

14. In Merrill Trust Co. v. United States, supra, this Court said,
"Unless * * * a standard for the exercise of the life beneficiary's power of invasion is ascertainable from the language of the will * * *, there is no occasion for examining the possibility of invasion and the remoteness thereof. This second question only becomes pertinent when the standard is found to exist." 167 F.Supp. at 478.

15. As the government points out, there was certainly more than a remote possibility that during her 22-year life expectancy Mrs. Emery might have employed a substantial number of household servants, and that with advanced age or illness she might have needed around-the-clock care.

16. As has been noted, the bequest to household employees cannot affect the deduction claimed for the year ended

March 31, 1963, since Mrs. Emery died during that year. See n. 10, supra.

17. As the Supreme Court observed in the Merchants Nat. Bank of Boston case, no charitable deduction will be permitted where "the standards by which the extent of permissible diversion of corpus is to be measured *embrace factors which cannot be accounted for accurately by reliable statistical data and techniques.*" 320 U.S. at 260–261, 64 S.Ct. at 111 (Emphasis supplied.) See also Humes v. United States, supra, 276 U.S. at 494, 48 S.Ct. 347; United States v. Dean, 224 F.2d 26, 28 (1st Cir. 1955) (where the Court of Appeals for this Circuit observed that the denial of the deduction in Commissioner of Internal Revenue v. Sternberger's Estate, supra, rested "on the ground that the actuarial art was unable to cope with the contingency of that * * * case.")

Mrs. Emery's death, "fixed by reference to (any) readily ascertainable and reliably predictable facts," so that "the amount which (might) be diverted from the charity and the present value of the bequest (became) adequately measurable." Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, 320 U.S. at 261, 64 S.Ct. at 111; Newton Trust Co. v. Commissioner of Internal Revenue, supra, 160 F.2d at 179–180.[18]

The Board of Tax Appeals considered a comparable will provision in Jaynes v. Commissioner, 29 B.T.A. 259 (1933), the case most nearly analogous to the case at bar of those which have been called to the Court's attention. In that case, the will provided that at the death of the testator's two children, who were to receive the income from his estate for their lives, $25,000 of the corpus was to be paid to each of the testator's grandchildren, and the balance of the estate was to go to charity. In their income tax return for the year 1929, when the value of the estate exceeded $465,000, the trustees sought a charitable deduction for capital gains added to the corpus. At the time, both of the testator's children were over 50 years of age, and he had only two grandchildren. It was stipulated that in order for the principal of the estate to be exhausted by payments to grandchildren of $25,000 each, the testator's two children would have to produce more than sixteen additional offspring. Although it was unlikely that this contingency would occur, the court denied the claimed deduction, saying in part:

> "Any attempt to determine the extent to which the trust fund may be depleted by the birth of additional children must necessarily depend entirely on a guess as to the number, and this would lead * * * into the realm of pure speculation." 29 B.T.A. at 262.

Here, as in *Jaynes,* whether the capital gains realized during the fiscal years 1961 and 1962 were permanently set aside for charitable purposes depended on a "guess" as to the number and the length of service of any household employees which Mrs. Emery might hire prior to her death. These questions created "elements of speculation too large to be overcome." Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, 320 U.S. at 263, 64 S.Ct. at 112. Cf. Langenbach's Estate v. Commissioner of Internal Revenue, 134 F.2d 590 (6th Cir. 1943).[19]

■ The power of termination granted the trustee by Clause Fourth H of Mr. Emery's will made it even more impossible to predict with any certainty the value of the charitable bequest, or in fact to determine with any assurance that charity would benefit to any extent from Mr. Emery's estate. The crucial language of Clause Fourth H reads as follows:

> "If the principal of my trust estate should, at my death or before or at the death of the last beneficiary of paragraphs A to E, inclusive, be so re-

---

18. The Court cannot agree with plaintiff's argument that the bequest to household employees was to be paid only out of the income of the trust, and therefore did not contemplate any invasion of principal. While the language of the will is not entirely clear in this respect, the grammatical construction of Clause Fourth does not compel such an interpretation. As the government observes, the plaintiff's suggested reading of the will would completely nullify the bequest to household employees, since all' of the net income of the trust was to be paid to Mrs. Emery until her death, and under no circumstances could there have been any accumulated income on hand at her death to satisfy the bequest to household employees. It seems evident that Mr. Emery could not have intended this result.

19. The case of United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934), which is cited by plaintiff, is plainly distinguishable. In that case, as the court pointed out, the decedent's daughter had undergone an operation which rendered her incapable of child-bearing, and there was no possibility that the charitable remainder would be defeated. 291 U.S. at 280, 54 S.Ct. 389. See n. 13, supra.

duced as to make the accomplishment of the purposes of my trust impossible, my Trustee may petition the proper Court for a termination of the trust, and in case of such termination my residuary estate shall be distributed one-half to said Clarence L. Emery, or his heirs, and the remaining one-half to said Aline Brent Warren, Clarence Fitzpatrick and Laura W. Schonemann, or if any one or two of these three are deceased, his or her share to the survivors equally, and if all of said last named three are deceased, their shares shall go to the Salvation Army."

It is clear, as plaintiff concedes, that this provision can only reasonably be read as authorizing a termination of the trust (thus entirely defeating the charitable bequest) if the trust income should fall below the amount necessary to provide for the eleven relatives to whom Mr. Emery gave specific bequests in Paragraphs A through E of Clause Fourth.[20]

There can be no question that the will as a whole plainly indicates that Mr. Emery's primary purpose was to insure that his wife, and after her death, their relatives, would be adequately provided for. If Mrs. Emery survived him, the entire income of his estate, together with any principal required for her proper support and maintenance, was to be paid to her until her death. Upon Mrs. Emery's death, monthly payments in amounts ranging from $50 to $200 each were to be paid to designated relatives during their lives. The trustee was authorized to increase these monthly payments if necessary "to provide for their comfortable support and maintenance, including

extraordinary bills for medical or hospital care and nursing" (Clause Fourth A); if "unexpected misfortune" should arise (Clause Fourth B); or if "there should be available unused income or an increase in cost of living or if the needs of the beneficiaries for comfortable support should change" (Clause Fourth F). Consistent with Mr. Emery's evident purpose, the will further provided for the termination of the trust if, "before or at the death of the last beneficiary of Paragraphs A to E, inclusive," the purposes of the trust became impossible of accomplishment, in which event the corpus was to be distributed to designated family members (Clause Fourth H). In short, it is evident from a reading of his entire will that Mr. Emery wished to insure that adequate provision was made for his family, and that if, for any reason, this became impossible, the charitable remainder was to be extinguished. As the Supreme Court observed in Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, no deduction will be allowed "the testator who, preferring to *insure* the comfort and happiness of his private legatees, hedges his philanthropy." 320 U.S. at 260, 64 S.Ct. at 111. (Emphasis in original.)

Plaintiff argues, however, that the termination provision is not fatal to the claimed deductions because the possibility of its being exercised is so remote as to be negligible. The Court cannot agree. At best, the trust income is marginal. In fact, at no time since Mrs. Emery's death has the income of the trust been sufficient to permit the trustee to pay in full the amounts due the beneficiaries under Paragraphs A through E of Clause Fourth.[21] But even if this were not the

---

**20.** The parties agree that the termination provision cannot reasonably be read as applicable only if it should become impossible to carry out the charitable purposes of Mr. Emery's trust. As defendant points out, Mr. Emery stated his charitable purposes so broadly that they could not become impossible of accomplishment unless all disease, poverty and the need for education and religion were to come to an end. Certainly, a fair reading of the will does

not suggest that Mr. Emery had this utopian possibility in mind.

**21.** The record discloses that in the fiscal years 1963 and 1965 the trust income was not sufficient to permit the trustee to pay the amounts currently due the beneficiaries, and at no time since Mrs. Emery's death has the income been sufficient to permit payment to the beneficiaries of the accumulated deficit in the amounts owed them. As of March 31,

case, it would be impossible to predict at any given time that the trust income would always be sufficient to take care of the large number of relatives who were designated as beneficiaries. Not only does the total amount of the payments directed exhaust the entire estimated income of the trust for a substantial number of years in the future,[22] but there is no surplus available ·to permit any increases in the amounts payable to the beneficiaries if either the cost of living or their needs should increase.[23] The testimony of plaintiff's actuary demonstrates beyond question that there is no method known to actuarial science for estimating whether the income of the trust will be adequate over the extended period of years involved [24] to meet the needs of the named beneficiaries.

A somewhat similar will provision was involved in Estate of William P. Allen v. Commissioner, 6 T.C. 597 (1946). Under the will in that case the trust principal was to go to charity after an intervening life estate to the testator's widow, but the trustees were directed to invade corpus to the extent necessary to make the monthly payments to the widow not less than $1500. The court found that the trust income was 1.66 times the required minimum payments. Nevertheless, the court denied the claimed charitable deduction because it was "impossible to reliably predict that an invasion of the corpus will not occur during the existence of the trust." 6 T.C. at 603–604.

In *Allen*, where the anticipated income was 1.66 times the requirement for a single beneficiary, the court found the margin too slim to allow a reliable prediction as to whether corpus would be invaded. In the instant case, the estimated cushion is far smaller, and the number of beneficiaries whose needs might exhaust the income is far greater.[25] Certainly, in this case the termination provision makes it impossible to make any "highly reliable appraisal of the amount * * * charity will receive." Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, 320 U.S. at 261, 64 S.Ct. at 111. Cf. Tracy v. Commissioner, 30 B.T.A. 1156 (1934).

In Henslee v. Union Planters Nat. Bank & Trust Co., supra, the Supreme Court held that no charitable deduction was allowable where the terms of the will were "ineffective to guarantee preservation of any predictable fraction of the ·corpus for disposition * * *" to charity. 335 U.S. at 598, n. 3, 69 S.Ct. at 292. And in Commissioner of Internal Revenue v. Sternberger's Estate, supra, the Supreme Court held that no deduction can be permitted "where there is no assurance that charity will receive the bequest or some determinable part of it." 348 U.S. at 199, 75 S.Ct. at 235. Likewise, in the present case the deductions cannot be permitted where the bequest to household employees in Clause Fourth G and the power of termination in Clause Fourth H of Mr. Emery's will make it impossible to predict with any assurance that charity will receive any determinable portion of the corpus of his estate.

1966, the amount owing to the beneficiaries was $900, and the accumulated deficit in income cash amounted to $418.12.

22. Plaintiff's actuary estimated that the required payments might exceed the trust income until 1982.

23. In fact, two of the beneficiaries have already requested increased payments because of hardship.

24. Plaintiff's actuary estimated that some part of the income of the trust would be paid to the named relatives until 1999.

25. In United States v. Dean, supra, the Court of Appeals for this Circuit stated in this regard,
"* * * (W)e do not think that one chance in eleven can be considered so remote a chance as to be negligible, that is, a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction." 224 F.2d at 29.

**638**

Being unable to find that any part of the undistributed capital gains in the years involved were "permanently set aside" for charitable purposes within the meaning of Section 642(c) of the Internal Revenue Code of 1954, the Court concludes that the Commissioner properly disallowed the claimed deductions.

Judgment will be entered for defendant, with costs.